UNITED STATES of America, Plaintiff-Appellee,

v.

Ramon DIAZ, Defendant-Appellant.

No. 81–5119
Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Nov. 23, 1981.

Rothblatt, Rothblatt & Seijas, Henry B. Rothblatt, New York City, for defendant-appellant.

David L. McGee, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before TJOFLAT, FAY and HENDERSON, Circuit Judges.

PER CURIAM:

The appellant, Ramon Diaz, seeks to overturn his conviction of conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846. Having carefully reviewed the appellant's allegations of insufficient evidence; improper cross-examination; plain error in the jury's withdrawal charge and in the prosecutor's closing argument; and excessively harsh sentencing, the court finds them meritless. Accordingly, we affirm.

I.

In September of 1979, Longine Gelebert sought to hire Robert Jansenius, a charter boat operator and reputed marijuana runner, to transport Colombian marijuana from Mexico to Panama City, Florida. Jansenius disclosed Gelebert's offer to a law enforcement officer in the Bay County Sheriff's Department. The officer asked Jansenius to feign cooperation with Gelebert in order to assist police investigation of the scheme. Jansenius acquiesced and told Gelebert that he would transport the marijuana. Gelebert then introduced Jansenius to the appellant, Ramon Diaz, who informed Jansenius that his fee for transporting the marijuana to Sherman's Shipyard in Panama City would be $250,000. Diaz and Jansenius maintained communication by means of telephone.

During this same period, Andrew Fautious, a friend of Gelebert, approached Jeff Sherman, owner of the Panama City Shipyard, with a proposition: If Sherman would permit the landing of marijuana in his shipyard, he could expect to receive $100,000. Like Jansenius, Sherman revealed the offer to a local agent of the Drug Enforcement Administration. At the request of the DEA, Sherman pretended to go along with the plot; he then taped a subsequent phone conversation with Fautious. Several weeks later, Gelebert introduced Diaz to Fautious, who took the appellant to Sherman's Shipyard.

Based on the reports of Sherman and Jansenius, a warrant was obtained for the electronic surveillance of Gelebert's home telephone. Four telephone conversations between Diaz and Gelebert were taped. As a result of information derived from these and other conversations, charges were subsequently brought against participants in the illicit scheme: On April 4, 1980, a grand jury indicted the appellant, Ramon Diaz, and Longine Gelebert as drug co-conspirators. Tried separately and convicted, Gele-

bert was called as a witness for both the prosecution and defense at Diaz's subsequent trial. Robert Jansenius provided further key testimony for the government. Taking the stand in his own behalf, Diaz admitted his involvement in the smuggling plan; nevertheless, he insisted that once he realized the potentially dangerous legal consequences for himself and his family, he withdrew from the conspiracy. Unconvinced, the jury found Diaz guilty as charged. Diaz was sentenced to a prison term of five years and fined $15,000.00.

## II.

### A. Sufficiency of the Evidence

■ The appellant challenges the sufficiency of the evidence to support his conviction, on the grounds that uncontradicted evidence adduced at trial demonstrated his withdrawal from the conspiracy prior to the commission of any overt acts. In reviewing this claim, the court must examine the evidence in the light most favorable to the government, accepting all reasonable inferences which support the jury's verdict. *United States v. Marx*, 635 F.2d 436, 438 (5th Cir. 1981). The test specifically applied to conspiracy convictions is whether *substantial evidence* exists to support the verdict. *United States v. Martino*, 648 F.2d 367, 393 (5th Cir.), *vacated in part, sub nom., United States v. Holt*, 650 F.2d 651 (1981); *United States v. Malatesta*, 590 F.2d 1379, 1382 (5th Cir.) (*en banc*), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979).

■ Since Diaz admitted his membership in the conspiracy, the substantial evidence test must be applied to the appellant's defense of withdrawal. Having joined the conspiracy, Diaz could withdraw only by taking affirmative action to defeat or disavow its purpose. *United States v. Martino*, 648 F.2d at 404. The burden of proving withdrawal from a conspiracy rests upon the defendant. *United States v. Killian*, 639 F.2d 206, 209 (5th Cir. 1981); *United States v. Bradsby*, 628 F.2d 901, 905 (5th Cir. 1980).

■ At trial, Diaz testified that his co-conspirators, Andrew Fautious and Longine Gelebert, "worked out the numbers and it looked like a very interesting deal. That's why I went ahead and planned it with them." Trial transcript, vol. III at 244. The use of a boat owned by Robert Jansenius for offloading the marijuana formed part of that scheme. Responding to his attorney's inquiry regarding his intention to withdraw, Diaz stated:

A. Well, many a phone call I had with him and I told him to stand by and be patient and when things were ready I would get back to him. But he kept calling me back and calling me back and I mean I just had to keep making up excuses for him just to leave me alone.

Q. So are you saying that when you told Jansenius he would have to wait or something was happening or this or that, that that in fact was not true, you were pushing him off?

A. That's right.

Q. Then did there come a time when you leveled with Jansenius?

A. Yes. And I told him right off. I said I'm out of this thing.

Trial transcript, vol. III at 246–47.

"Making up excuses," as Diaz phrased it, does not amount to clear disavowal of the conspiracy. Further controverting Diaz's defense of withdrawal is the revelation by Jansenius at trial that he did not become aware that the planned marijuana haul was not going to take place until he learned that some conspirators were under indictment.

Corroboration of Diaz's claim of withdrawal was provided by his admittedly close friend, Gelebert, who testified evasively on behalf of the appellant that "Jansenius told me that they called me up and said it was not going to happen. I think he did." Trial transcript, vol. III at 227.

Given the above, the court finds that substantial evidence exists to support Diaz's conviction. Faced with a credibility choice regarding the conflicting testimony, the jury's determination that Diaz failed to

withdraw from the conspiracy was entirely reasonable and should not be disturbed.

### B. Withdrawal Charge

■ During the charge conference held at the close of trial, the court discussed jury instructions regarding conspiracy and withdrawal with counsel for both the government and the defense. No objection was raised to the final version. Since the appellant failed to object to the instruction at trial, this court cannot reverse unless there were "plain errors or defects affecting substantive rights" of the defendant. F.R. Cr.P. 52(b); *United States v. Jimenez*, 622 F.2d 753, 757 (5th Cir. 1980).

The appellant now asserts that the court committed plain error in failing to inform the jury that the respective burdens on the government and the defendant to prove participation in, and withdrawal from, the conspiracy are different.

■ The trial court carefully instructed the jury that the government had to prove "beyond a reasonable doubt" the existence of the conspiracy and Diaz's membership in it. The court continued the charge as follows:

> This is not the case with reference to the defense of withdrawal from the alleged conspiracy. The burden of establishing withdrawal is on the Defendant. In order for such defense to prevail, a Defendant must demonstrate some type of affirmative action which disavows or defeats the purpose of the conspiracy either by making a clean breast to the authorities or communication of the abandonment in a manner reasonably calculated to reach co-conspirators. A withdrawal defense requires that the abandonment be complete and in good faith. A withdrawal that is caused by a Defendant's fear of immediate apprehension is not a bonda [sic] fide defense to the charge of conspiracy.

Trial transcript, vol. III at 332.

This instruction, patterned closely on that approved in *United States v. Jimenez*, 622 F.2d at 757, appears a correct recitation of the law. *See United States v. United*

*States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). Accordingly, we find no basis for the appellant's contention of plain error as to the court's charge to the jury.

### C. Closing Argument

■ During its closing argument to the jury, defense counsel commented that

> [i]f Mr. Diaz is all that they say he is I don't think it would be hard to find some competent [DEA or FBI agent] who have investigated him in the past and who would take the stand and tell you all of the ills and evils of Mr. Diaz.

Trial transcript, vol. III at 311.

The prosecutor responded by stating to the jury in his final argument:

> The fact that we haven't talked about reputation, background or things like that may very well not be the result of the absence of evidence. It may very well be the result of the rules of evidence.

Trial transcript, vol. III at 321.

The appellant, who failed to object at trial to the above prosecutorial remark, now contends that the comment constitutes plain error warranting reversal of his conviction.

In *United States v. Morris*, 568 F.2d 396 (5th Cir. 1978), the court stated that "an attorney may not say anything to the jury implying that evidence supporting the attorney's position exists but has not been introduced in the trial." *Id.* at 401. While not constituting direct statements, the words of counsel for both the defense and prosecution imply that such evidence may have existed. In light of *Morris*, it appears that the prosecutor's comment, although merely responsive to the prior comment of defense counsel, may have been erroneous.

However, even assuming *arguendo* the impropriety of the prosecutor's remark, it clearly does not rise to the level of reversible error. As articulated in *Morris*,

> [e]rror must be regarded as harmless if, upon examination of the entire record,

substantial prejudice to the defendant does not appear.

568 F.2d at 402.

Given Diaz's admission of his membership in the conspiracy as well as the trial judge's cautionary instruction to the jury, made shortly after the prosecutorial comment, that they may not consider statements of counsel as evidence, this court finds that no substantial, uncured prejudice flowed from the prosecutor's remark. Since the appellant's rights remained fully protected, it follows that the error complained of must be deemed harmless.

## D. Cross-examination

Diaz claims that the trial court erred in restricting defense counsel's cross-examination of Gelebert as a prosecution witness, while it allowed extensive prosecutorial cross-examination of Gelebert when he was called to testify for the defense. As a government witness, Gelebert was granted immunity. On direct examination, Gelebert stated that Diaz had visited him in September of 1978. During cross-examination, defense counsel, inquired as to a conversation which he had with Diaz during that visit. The prosecutor objected on the grounds that the inquiry was beyond the scope of direct examination. The court sustained the objection, explaining that the defense could call Gelebert as its own witness. Trial transcript, vol. II at 115–16.

This ruling comported fully with Rule 611(b) of the Federal Rules of Evidence, which limits cross-examination to the subject matter of the direct examination and matters affecting the credibility of the witness.

Called on later as a defense witness, Gelebert was questioned in detail on direct examination regarding the 1978 visit and any conversation which he may have had with Diaz touching on the importation, smuggling, sale or use of marijuana. Gelebert denied the occurrence of any such conversation. Trial transcript, vol. II at 195. Over defense objection, Gelebert was questioned extensively during cross-examination as to any discussion he may have had with Diaz

concerning drugs. Despite his grant of immunity, Gelebert remained extremely evasive. While at one point during the inquiry Gelebert admitted having confirmed a "deal" with Diaz, Id. at 206, more frequently he denied any knowledge whatsoever of drug transactions. Id. at 197–201.

■ The trial court has broad discretion to determine the extent of cross-examination. Further, the scope of direct examination may be exceeded on cross-examination for the purpose of testing the credibility of the witness. United States v. Contreras, 602 F.2d 1237, 1242 (5th Cir.), cert. denied, 444 U.S. 971, 100 S.Ct. 466, 62 L.Ed.2d 387 (1979). In light of these well-established standards, the questioning of Gelebert was properly with the scope of cross-examination and did not constitute reversible error.

■ Prior to redirect, defense counsel asked that Gelebert be declared a hostile witness. The prosecutor's objection to this request was sustained. The record clearly reflects, however, that, despite the grant of immunity, Gelebert's hostility was directed to the government, rather than to Diaz. Previously, Gelebert had testified that he was a very good friend of Diaz and that he had known him for approximately five years; and, upon re-direct, Gelebert answered defense counsel's questions without hesitation, admitting the conversations about marijuana. Id. at 222–26. Accordingly, the trial court's refusal to declare Gelebert a hostile witness was entirely proper.

## E. Cross-examination of Jansenius

■ During cross-examination of Jansenius, defense counsel attempted to question him about prior unrelated smuggling activities. The court sustained the prosecutor's objection to this line of inquiry. Given the established principle that no witness may be impeached by evidence of any prior specific misconduct or crime for which he has not been convicted, United States v. Turquitt, 557 F.2d 464, 471 (5th Cir. 1977) the court's ruling must be upheld. See also

United States v. Cluck, 544 F.2d 195 (5th Cir. 1976); United States v. Davenport, 449 F.2d 696 (5th Cir. 1971); Hurst v. United States, 337 F.2d 678 (5th Cir. 1968).

### F. Sentencing

The appellant challenges as an abuse of discretion his sentence to five years in prison and fine of $15,000.00. Convicted of conspiracy to smuggle twenty tons of marijuana, Diaz was sentenced pursuant to 21 U.S.C. § 841(b)(6), which provides a maximum prison term of fifteen years and a maximum fine of $125,000.00 for a violation involving in excess of 1000 pounds of marijuana. Diaz complains that, in view of his withdrawal from the conspiracy, a lesser sentence was warranted. However, the jury's clear rejection of his withdrawal defense, as evidenced by their return of a guilty verdict, negates the validity of such an argument.

This court ordinarily will not review the severity of a sentence which is within the statutory limits, although it will scrutinize carefully the judicial process by which such punishment was imposed. United States v. Clements, 634 F.2d 183, 186 (5th Cir. 1981).

The appellant here was not accorded the maximum sentence; indeed, the record clearly indicates the trial judge's intention not to impose such. Trial transcript, vol. III at 10. Although the court noted that it would not impose upon Diaz a lesser penalty than that previously given Gelebert, it nevertheless indicated that Diaz's trial testimony, placed in a file as part of the presentence investigation, was considered in the sentencing determination.

Our review of the sentencing proceeding record, including all pertinent trial court comments, reveals no abuse of discretion on the part of the sentencing judge.

### III.

For the foregoing reasons, the judgment of the trial court is hereby AFFIRMED.