UNITED STATES of America,
Plaintiff-Appellee,

v.

Glen VAGLICA and Ronald Parker,
Defendants-Appellants.

No. 83–2129
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 9, 1983.

Sparks & Hawthorn, Joseph C. Hawthorn, Beaumont, Tex., for Vaglica.

Stephen M. Rienstra, Port Arthur, Tex. (Court-appointed), for Parker.

Sidney M. Glazer, Janis H. Kockritz, Attys., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before BROWN, TATE and HIGGINBOTHAM, Circuit Judges.

TATE, Circuit Judge:

The defendants Glen Vaglica and Ronald Parker were convicted after a jury trial of conspiracy to import marijuana into the United States in violation of 21 U.S.C. §§ 952, 960, and 963 and conspiracy to possess with the intent to distribute a quantity of marijuana in excess of one thousand pounds in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(6) and 846. On appeal, the defendant Parker primarily claims (1) that the trial court erred by failing to instruct the jury as to the elements of the substantive crimes constituting the objects of the charged conspiracies; he also claims (2) that the district court's instruction on reasonable doubt improperly shifted the burden of proof to the defendant and (3) that his sentence of seven years for the "conspiracy to possess with the intent to distribute" count exceeds the maximum penalty authorized by the statutes named in the indictment. Finding no reversible merit to any of Parker's contentions, we affirm his conviction.

As to the defendant Vaglica, we find merit to his single claim on appeal that an inaccurate and improper statement made by the prosecuting attorney during his closing argument, over the defendant's objection and without correction by the court, struck to the heart of his defense by suggesting to

the jury that evidence not presented at trial was available to refute the defendant's testimony. Accordingly, we set aside Vaglica's conviction and remand for further proceedings.

*Factual Context*

Vaglica, Parker, and three co-defendants were indicted for conspiring to import and to possess with the intent to distribute a quantity of marijuana in excess of one thousand pounds. According to the government's case, the defendant Parker and two others planned to import approximately 25,-000 pounds of marijuana from Colombia to the United States in their boat. Government agents learned of Parker's plan and his wish to find others who would assist in the venture by providing fuel and special equipment for his boat. The government agents put Parker in contact with the defendant Vaglica, who had stated to other undercover agents that he owned the Industrial Steel Corp. of Orange, Texas, which could provide a larger boat for the operation. Vaglica told Parker that his company could fabricate two large steel tanks for a boat that would be capable of housing 60,-000 pounds of marijuana. The defendants agreed to cooperate and held further meetings to proceed with the plan. Government agents, however, arrested the defendants before they began their smuggling expedition.

Both defendants introduced evidence in support of their argument that they had never intended to complete the transaction and thus did not have the requisite intent to become part of a conspiracy. Robert Sonnier, who had been indicted as one of the co-conspirators in the smuggling scheme and who pled guilty before trial, testified that Parker had confided to him that the entire plan was in fact a set-up to "rip-off" the other smugglers for their "front money."

Similarly, Vaglica testified in his own defense that he never had any intention of going through with the importation scheme. Vaglica supported his claim by testifying that in 1979 he discovered that an employee engaged in a similar conspiracy was building marijuana containers in his shipyard. Vaglica stated that he waited until his company received payment for the work, and then informed the United States Attorney and a Customs Official about the transaction. Vaglica's attorney at the time of the 1979 incident similarly testified that he and his client informed law enforcement authorities about the offense committed by the employee and that he accompanied Vaglica to speak with the United States Attorney and to give information about the employee's criminal activity. Vaglica claimed in the present case that it was his intent to act in the same manner in this transaction.

At the close of the trial, the jury returned verdicts of guilty as to both defendants on both counts. The defendants appeal their convictions to this court.

## I. *The Defendant Parker's Contentions*

### 1. *"Substantive Crimes" Instruction*

Parker contends that the district court erred by failing to adequately instruct the jury on the essential elements of the substantive crimes which constituted the objects of the charged conspiracies. In its instructions, the court read the substance of each of the counts in the indictment to the jury,[1] but offered no further explanation to

---

1. This portion of the court's instructions to the jury reads as follows:

Count 1 of the Indictment charges that the defendants knowingly and willfully combined, conspired, confederated and agreed to distribute, dispense and possess with intent to distribute and dispense a quantity exceeding a thousand pounds of marihuana, in violation of Title 21, United States Code, Section 841(a)(1) and 841(a)(6) (sic).

As to Count 1, you will note that the defendants are not charged in that count with violating those sections, as such; rather,

they're charged with having conspired to do so. A separate offense under Title 21, Section 846.

Count 2 charges that the defendants knowingly and willfully combined, conspired, confederated and agreed to intentionally import into the United States of America from places outside the United States, a quantity of marihuana, in violation of Title 21, United States Code, Section 952 and 960, and as in Count 1, you will note that in Count 2, the defendants are not charged with violating the

the jury on the substantive elements of "importation", "possession" and "distribution," [2] the "object" offenses, *i.e.,* the offenses the commission of which was the object of the conspiracies. Parker's trial counsel did not submit requested instructions on these points, but did specifically object to the omission of more detailed instructions on these elements at the time that the court charged the jury.

The failure to instruct the jury on the substantive or "object" crimes of a conspiracy charge is not always plain error, *see United States v. Marino,* 562 F.2d 941, 945 (5th Cir.1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978), but we have held that such an omission by the trial court does constitute a "serious" error, *United States v. Martinez,* 496 F.2d 664, 669 (5th Cir.), *cert. denied,* 419 U.S. 1051, 95 S.Ct. 627, 42 L.Ed.2d 646 (1974). As the defendant Parker correctly notes, the only instruction to the jury on the question of importation, possession and distribution was made by the trial judge when he reviewed the substance of the indictment with the jury.

■ Nevertheless, though the omission might be considered a serious error under other circumstances, it is harmless under the issues as raised in the present prosecution. Parker's defense in the present case rested upon his claim that although he was aware of the illegal activities, he never intended to consummate the illegal transaction. Parker's defense does not raise an issue as to any element of the object offenses, such as importation, possession or distribution, or even as to the existence of a smuggling conspiracy. Rather, Parker contends that he feigned participation in the scheme and did not have the requisite intent to become part of the conspiracy.

Parker's defense has raised only a question as to his intent to participate in the conspiracy, and raised no question as to the elements of the substantive crimes which were the object of the charged conspiracies. Accordingly, we find no reversible error in the trial court's instructions when viewed in light of the defense raised by Parker in the present case.

2. *Parker's Other Claims*

We briefly address Parker's several other meritless claims on appeal.

■ Parker argues that his sentence of seven years imprisonment on Count One of the indictment, i.e. conspiracy to possess in excess of 1,000 pounds of marijuana with the intent to distribute, must be reformed since it exceeds the punishment authorized by the only statute correctly cited in the indictment, *i.e.,* 21 U.S.C. § 841(a) (authorized maximum punishment of five years). Parker argues that he should not have been sentenced under § 841(b)(6), which provides for an enhanced sentence of up to fifteen years imprisonment when an offense involves in excess of 1,000 pounds of marijuana. However, the language in the indictment clearly specifies that the defendant is charged with conspiracies to import and possess with the intent to distribute "a quantity exceeding 1,000 pounds of marijuana." Moreover, the court instructed the jury that the defendants were charged with conspiring to import, possess and distribute more than 1,000 pounds of marijuana. *See also* Fed.R.Crim.P. 7(c)(3) (citation error in indictment not grounds for reversal of conviction unless the defendant is prejudicially misled).

■ Parker next contends that the trial judge's instruction to the jury on reasonable doubt impermissibly shifted the burden of proof to the defendants when he stated:

So, if there exists at the conclusion of the case, two reasonable theories, one equally supported by the evidence (sic), one consistent with the guilt of the defendant, the other consistent with the innocence of the defendant, you must adopt the theory

---

Section; there was no importation; but they are charged with having conspired to import, a separate offense under the same statute.

**2.** Parker does not question the adequacy of the court's instructions on the other essential elements of the indictment.

consistent with the innocence of the defendant and acquit the defendant.... Since Parker's counsel did not object to this charge, we must review the instruction for plain error only. Fed.R.Crim.P. 52(b). We find that the trial court's instructions, in their entirety, clearly and repeatedly explained the presumption of innocence and placed the burden upon the government to prove Parker's guilt of every element of the crime beyond a reasonable doubt. Thus, we cannot find the overall charge given on the burden of proof to be plainly erroneous. *See also United States v. Pena,* 527 F.2d 1356, 1365 (5th Cir.) *cert. denied,* 426 U.S. 949, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976) ("equally supported theories" charge not plain error); *Accord, United States v. Sukumolachan,* 610 F.2d 685, 688 (9th Cir.1980) ("equally supported theories" charge often favors defendant).

██ Finally, Parker claims that the trial court erred by instructing the jury that mere presence "does not necessarily establish proof of the existence of a conspiracy. It may or may not, depending upon your evaluation and your judgment of the evidence in the case." While it is clear that mere presence without more does not suffice to make out a conspiracy charge, *see United States v. Palacios,* 556 F.2d 1359, 1365 (5th Cir.1977), we do not find that this instruction was prejudicial to the defendant Parker when viewed with the entirety of the court's charges to the jury. The court gave the jury detailed instructions on the law of conspiracy both before and after this statement that should have adequately cured any confusion that conceivably might have been caused by this instruction.

## II. *The Defendant Vaglica's Contention*

The defendant Vaglica raises no issue of erroneous evidentiary ruling, nor does he question the sufficiency of the evidence, if the jury disbelieved his sole defense—*i.e.,* that, as in a 1979 incident, he feigned agreement with the conspiracy to sell his containers, but intended as soon as he received his money to report the incident to law enforcement authorities and to abort it. Vaglica's sole contention on appeal is that this sole defense to the charge against him was severely prejudiced when the prosecutor, in his final closing argument, was erroneously permitted over his counsel's objection, to make a misstatement of law that, further, implied that the government had evidence to refute this defense that only the rules of evidence precluded the government from introducing.

During his closing argument, Vaglica's attorney had argued that his client's claim that he did not intend to proceed with the smuggling scheme was credible, in light of Vaglica's testimony, as corroborated by his previous attorney, that he had reported a similar scheme in 1979 after he had collected the payment for the work his shipyard had performed and that he intended to do the same thing in the present case. His trial attorney noted particularly that the government failed to introduce any evidence or present the assistant United States attorney or any other witnesses to refute his client's claim that he had reported the 1979 incident to law enforcement officers after collecting the money for building the containers.

In response to this argument, the prosecutor remarked in his closing argument as follows:

> The reason we didn't bring any evidence in one way or the other following, is because the Federal Rules of Criminal Evidence (sic) prohibit us from bringing in any witness on that particular item.

Vaglica's attorney promptly objected to the statement as "contrary to law", but the court overruled the objection. Vaglica's attorney again protested that Rule 608 did not bar the admission of such evidence, but to no avail.[3] The prosecutor resumed his argument, remarking that

---

**3.** After the court overruled his objection, Vaglica's trial attorney stated:

> Your Honor, for purposes of the record, the Defendants (sic) contention is that that type

of evidence is admissible for purposes of impeachment after it has been initially brought out by the Defendant; it can be gone

the Government was limited to cross examining and taking whatever answer he gave us, but he did come in here and lie to you about a couple of things.

The plain import of this prosecution argument was that only because of the rules of evidence was the government unable to refute the testimony of Vaglica and his attorney that in 1979, similarly to Vaglica's lack of criminal intent in the present instance, Vaglica feigned agreement with a conspiracy in order to sell some containers, with the actual intent to inform law enforcement authorities of the conspiracy and to abort it as soon as he had been paid for his containers. Further, the argument implied that the government *could* have refuted this testimony, if the rules of evidence so permitted.

■ The district judge erred in refusing to sustain the defense objection to this prosecution argument and, by its ruling, agreed with the prosecutor's statement that the government was barred by the rules of evidence from refuting the testimony of the 1979 incident relied upon in Vaglica's defense. In the first place, the prosecutor's statement of the applicable law was erroneous, as the overruled defense objection stated. In the second place, the prosecution's argument impermissibly implied that the government possessed evidence not in the record.

The government argues that the prosecutor's statement in closing argument was both accurate and proper because Rule 608(b) of the Federal Rules of Evidence prohibited the government from introducing any extrinsic evidence to rebut Vaglica's claim.[4] While it is true that Rule 608(b) excludes extrinsic evidence offered "for the purpose of attacking or supporting ... credibility," the extrinsic evidence at issue here would not have served merely to attack Vaglica's credibility, but also would have been relevant merit-testimony to rebut the merit-testimony of the defendant and his attorney as to the 1979 incident, on the material issue of the defendant's intent to join the present conspiracy.

The import of the defense testimony about the 1979 incident was to raise an issue about the defendant's present intent by showing his honest behavior in a similar incident. Thus, the 1979 incident became relevant evidence to the defendant's intent. Fed.R.Evid. 401, 402.[5] Nor did the government object to the relevance of either Vaglica's or his prior attorney's testimony about the events surrounding the 1979 incident. Further, even if the 1979-incident testimony were inadmissible, had objection been made, its introduction into evidence by the defendant "opened the door" as to its actual occurrence, insofar as bearing on the defendant's present intent, and the government was then entitled to produce evidence to rebut the defendant's claims about this earlier

into thoroughly by the Government for purposes of impeachment.

4. Rule 608(b) states:

(b) **Specific instances of conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not

operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.

5. Fed.R.Evid. 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed.R.Evid. 402 provides:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

incident. McCormick on Evidence, § 57 (2d ed. 1972).

The government's reliance upon Rule 608(b) as barring the introduction of such evidence is misplaced. The rule does not bar "the admission of evidence introduced to contradict, and which the jury might find disproves, a witness's testimony as to a material issue of the case." *United States v. Opager,* 589 F.2d 799, 803 (5th Cir.1979). The rule is addressed against the use of specific incidents to prove a witness's "capacity to lie." *Id.,* 589 F.2d at 811. Writing for this court in *Opager,* (then Chief) Judge Brown stated:

> We consider Rule 608(b) to be inapplicable in determining the admissibility of relevant evidence introduced to contradict a witness's testimony as to a material issue. So long as otherwise competent, such evidence is admissible.

*Id.,* 589 F.2d at 802.

Since the defense testimony about the 1979 incident was relevant to a material issue in the case, the government would have been entitled to rebut the claim with any extrinsic evidence it may have had available to do so. Insofar as the prosecutor's closing remark suggests otherwise, it misstates the proper scope and application of Rule 608(b).

Moreover, Fed.R.Evid. 404(b) allows the admission of other extrinsic crimes, wrongs or acts when offered for the purpose of showing "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Vaglica testified about his conduct in the 1979 smuggling incident to raise a question before the jury as to his motive and intent in the present conspiracy. When intent and motive are thus challenged in a conspiracy case, the government may be entitled to introduce extrinsic evidence of prior acts, such as the 1979 incident, to overcome the defendant's denial of criminal intent. *See United States v. Roberts,* 619 F.2d 379, 381–84 (5th Cir.1980). Thus, had the government offered witnesses who would testify as to Vaglica's conduct in the 1979 incident for the purpose of establishing motive or intent rather than to attack Vaglica's credibility, the trial court would likely have been within its discretion in allowing the testimony.

As this analysis suggests, closing arguments about facts that have been omitted because of the rules of evidence present the trial judge with a serious dilemma. If an objection is raised that the statement is contrary to law, the trial court must engage in a speculative inquiry on the question of whether certain hypothetical evidence, which may not have even been proffered to the court, would have been admissible. Given the ephemeral nature of such an inquiry, it is difficult for a trial court to properly assess whether or not the "evidence" would have been inadmissible, especially where, as in the case here, the "evidence" may have been inadmissible for one purpose and admissible for another.

■ Another danger inherent in this style of closing argument is that such statements imply to the jury "that evidence supporting the attorney's position exists but has not been introduced at trial." *United States v. Morris,* 568 F.2d 396, 401 (5th Cir.1978). As we stated in *Morris,* an attorney "may not state that he could have called additional witnesses whose testimony would have supported his version of the case." *Id.,* 568 F.2d at 401.

A similar situation was posed to this court in *United States v. Diaz,* 662 F.2d 713 (5th Cir.1981). In *Diaz,* the prosecutor stated in closing argument that the failure to discuss certain issues "may very well be the result of the rules of evidence." *Id.,* 662 F.2d at 717. After the defendant objected, the court promptly gave the jury a cautionary instruction not to consider the statement as evidence. We stated that "in light of *Morris,* it appears that the prosecutor's comment, although merely responsive to the prior comment of defense counsel, may have been erroneous," *id.* at 717, although we ultimately found the error to be harmless under the circumstances present in the *Diaz* case.

In the present case, unlike *Diaz,* we cannot find the prosecutor's statement to be harmless error. Vaglica's defense centered upon his claim that he never intended to go through with the conspiracy. The primary evidence in support of his defense was his own testimony that he had aborted a similar conspiracy in 1979. The prosecutor's statement clearly suggested to the jury that the government had evidence to rebut or refute Vaglica's testimony about reporting a similar conspiracy in 1979, but that the Federal Rules of Evidence prevented the government from introducing that evidence. Even if the remark had been an accurate statement of the law, it encouraged the jury to assume that inadmissible evidence existed that would negate the thrust of Vaglica's defense. Thus, the jury was invited by the prosecutor's argument to infer that, but for the rules of evidence, the primary evidence in support of Vaglica's defense would have been discredited. Unlike *Diaz,* no cautionary instruction was given to the jury to attempt to cure the impact of the remark.

In summary, a prosecutorial argument that suggests to the jury that facts or witnesses could have been presented "but for the rules of evidence" requires the trial court to make a speculative determination about the admissibility of hypothetical evidence in the time-pressured atmosphere of closing arguments. Aside from the dangers of such speculative evidentiary rulings, such remarks—even if correct statements of the law—may improperly suggest to the jury that inadmissible evidence exists that bears against the defendant's case.

*Conclusion*

In that we find the defendant Parker's contentions on appeal to be without reversible merit, we AFFIRM his conviction. Since we find merit to the defendant Vaglica's contention on appeal, we REVERSE his conviction and REMAND for further proceedings.

AFFIRMED in part; REVERSED in part and REMANDED.