**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Morris Ray BIGHAM and Leonel Leal, Jr., Defendants-Appellants.**

No. 86–2174.

United States Court of Appeals, Fifth Circuit.

March 9, 1987.

Rehearing and Rehearing En Banc Denied April 6, 1987.

---

George H. Tyson, Jr., Michael Ramsey, Houston, Tex., for Bigham.

Harry H. Walsh, III, Huntsville, Tex., for Leal.

Dennis J. Dimsey, Atty., Appellate Section, Civil Rights Div., Bethesda, Md., Henry K. Oncken, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., Wm. Bradford Reynolds, Jessica Dunsay Silver, Attys., U.S. Dept. of Justice, Washington, D.C., for the U.S.

Before REAVLEY and RANDALL, Circuit Judges, and MAHON *, District Judge.

REAVLEY, Circuit Judge:

Appellants Bigham and Leal, former Texas Department of Corrections officers, appeal their convictions under 18 U.S.C. §§ 241, 242 for violating the civil rights of two inmates. Their appeal raises questions of the admissibility of a prior out-of-court statement, the sufficiency of the evidence, and the adequacy of the trial court's instructions on when the use of force by prison guards rises to the level of a deprivation of constitutional rights. We affirm.

I

The appellants' convictions grew out of their conduct in connection with the escape and subsequent apprehension of two inmates from the Wynne Unit of the Texas Department of Corrections. On the evening of October 28, 1982, the two inmates escaped by disguising themselves as prison

* District Judge of the Northern District of Texas, sitting by designation.

guards. Within a few hours, they were apprehended by local sheriffs and returned to the prison's back gate. They were met there by a large group of prison officials, some of whom stripped the inmates of their clothing to search for contraband. The government presented evidence that the inmates were pushed and struck while at the back gate.

The inmates were then escorted up a hill to the prison building. Again, there was evidence that some of the prison officials kicked and struck the inmates as they made their way. Once inside the building, the inmates were taken to an office for questioning about the circumstances of their escape. Over the course of the following approximately thirty minutes, the inmates, still naked, were shuffled individually in and out of the office. During questioning in the office, the inmates were struck repeatedly by some of the several officers crowded into the room. There was no evidence that the inmates resisted the officers or otherwise provoked the beatings. The door was shut and the blinds drawn on the office window while the beatings occurred.

The government's evidence also showed that appellant Leal abused the inmates as they stood in the hallway outside the office. Leal struck one inmate in the head, forcing his head against a wall and causing a cut over his eye. Leal burned the same inmate with his cigarette and then required the second inmate to extinguish the cigarette with his bare foot. As Leal later escorted one of the inmates to the prison infirmary, he again struck the inmate and had to be restrained by a fellow prison official. Again, the thrust of the evidence was that the inmates did nothing to justify the use of any force by Leal at all, although there was some suggestion that one of the inmates did not move promptly down the hall when asked to do so.

There was testimony that at least some of the beatings in the office occurred on cue—a nod of the head—from the ranking prison official in the office. There was also evidence that following the beatings the officers agreed together to submit false reports on the incident to cover up their misconduct and explain the inmates' injuries.

Medical evidence presented by the government showed that one of the inmates suffered as a result of the beatings a one and one-half inch laceration over his eye, several burns, swollen testicles, and bruises and abrasions on the upper part of his body. The other inmate suffered bruises and abrasions on the upper part of his body and a blister on his foot. The same inmate also complained the next day of blood in his stool.

On July 15, 1985, a federal grand jury indicted six of the prison officials—including appellants—for violating the inmates' civil rights. The case went to trial in January of 1986. The jury convicted most of the defendants of both conspiring to violate the inmates' rights, 18 U.S.C. § 241, and actually violating those rights, 18 U.S.C. § 242. Appellant Bigham was convicted on the conspiracy count, but acquitted on the substantive counts. Only Bigham and Leal have appealed their convictions.

## II

Bigham claims the district court improperly admitted a prior statement of a key government witness against him. The government urges that the statement is admissible either as an adopted—and thus non-hearsay—statement of the witness or as a prior inconsistent statement. We find the statement admissible as a prior inconsistent statement and do not reach the question of adoption.

The government's case consisted largely of testimony from unindicted prison officials who were present on the night of the beatings. Several of those witnesses turned out to be quite reluctant once on the stand to tell what they saw, despite having earlier implicated the defendants in their testimony to the grand jury. The government was thus often left to introduce the witnesses' grand jury testimony in an effort to prove its case. One such reluctant witness was Burnetton Byrd, who was present in the office during the beatings and who told the grand jury that he saw

Bigham strike one of the inmates. Once on the stand, however, Byrd claimed he could not remember whether Bigham was in the office or whether he had struck an inmate. On further questioning, Byrd admitted that Bigham had been in the office and that he had told the grand jury that Bigham struck an inmate. But he still claimed he had no recollection whether Bigham in fact struck the inmate.[1]

■ Federal Rule of Evidence 801(d)(1)(A) excludes from the hearsay rule a statement that is inconsistent with the trial testimony of a witness who is subject to cross-examination concerning the statement. The rule requires that the prior statement, in addition to being inconsistent with the trial testimony, be made "under oath subject to the penalty of perjury at a trial, hearing, or other proceeding." The rule encompasses statements made before a grand jury. *See, e.g., United States v. Whitaker*, 619 F.2d 1142, 1149 (5th Cir. 1980); H.R.Conf.Rep. No. 1597, 93d Cong., 2d Sess. 10, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7051, 7098, 7104. Bigham argues that Byrd's statement to the grand jury that he saw Bigham strike an inmate is not admissible under this rule because it is not inconsistent with his testimony at trial that he could not remember whether Bigham had struck an inmate. We disagree.

■ Rule 801 does not give any explicit guidance for determining when two statements are inconsistent. Its background, however, is instructive. Although various commentators have argued that all prior statements of a witness should be excluded from the hearsay rule, the Federal Rules adopted the less radical position of admitting prior statements only when certain safeguards are present. One such safeguard is that the prior statement be incon-

sistent with the testimony given at trial. The drafters of the rule felt that this inconsistency requirement "assures a thorough exploration of both versions while the witness is on the stand and bars any general and indiscriminate use of previously prepared statements." Fed.R.Evid. 801 advisory committee note. The drafters also noted that the prior statement is more likely to be true as it was made closer in time to the event. Especially significant to this case is the drafters' belief that the rule would " 'provide a party with desirable protection against the "turncoat" witness who changes his story on the stand and deprives the party calling him of evidence essential to his case.' " *Id.* (quoting Cal.Evid.Code. § 1235, comment).

The district court properly admitted evidence of Byrd's grand jury statement. Because Byrd did not deny he made the statement or claim he was not able to recollect the circumstances of his appearance before the grand jury, Bigham had a full opportunity to cross-examine Byrd concerning that testimony. Bigham was free to attempt to elicit from Byrd testimony that would show the jury that Byrd's earlier statement should not be credited. The jury thus was in a position to make an informed determination as to the truthfulness of the prior statement. *Cf. DiCarlo v. United States*, 6 F.2d 364, 368 (2d Cir.), *cert. denied*, 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed.2d 1168 (1925) ("If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court.").

The policy of the rule to protect against turncoat witnesses is fully implicated in this case. Byrd was obviously an evasive and reluctant witness, and the trial judge reasonably could have concluded that his

---

1. The government's contention that Byrd adopted his grand jury testimony is based on the fact that, in addition to admitting telling the grand jury that Bigham struck an inmate, Byrd at one point answered that this testimony was true. *See* Fed.R.Evid. 801 advisory committee note ("If the witness admits on the stand that he made the statement and that it was true, he adopts the statement and there is no hearsay

problem."). Bigham argues that his adoption was equivocal and that he actually only admitted that the statement appeared on the transcript of his grand jury testimony and that his present testimony was he could not recollect the event. In light of our conclusion that the statement was substantively admissible as a prior inconsistent statement, we do not resolve this issue.

loss of memory was feigned. Despite his ability to remember in detail some of the events of the night the inmates were beaten, Byrd claimed no memory of other details. The district court reasonably could have concluded that this selective memory loss was more convenient than actual. Similarly, the fact that Byrd's grand jury testimony and his trial testimony were separated by only seven months, while the underlying event occurred several years earlier, casts doubt on Byrd's claimed loss of memory. As Professor Wigmore observed, "the unwilling witness often takes refuge in a failure to remember." 3A J. Wigmore, Evidence § 1043, at 1061 (Chadbourn rev.ed. 1970). The district court correctly admitted Byrd's prior testimony.[2]

Our decision on this issue is consistent with the overwhelming weight of authority from other circuits. *See, e.g., United States v. DiCaro,* 772 F.2d 1314 (7th Cir. 1985), *cert. denied,* — U.S. —, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986); *United States v. Distler,* 671 F.2d 954 (6th Cir.), *cert. denied,* 454 U.S. 827, 102 S.Ct. 118, 70 L.Ed.2d 102 (1981); *United States v. Dennis,* 625 F.2d 782 (8th Cir.1980); *United States v. Marchand,* 564 F.2d 983 (2d Cir. 1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978). An earlier decision in this circuit is also consistent with our decision here. *See United States v. Whitaker,* 619 F.2d 1142, 1149 (5th Cir. 1980) (upholding a conviction based on grand jury testimony of a witness who could not remember the event at trial).[3]

### III

Bigham next argues that the evidence was insufficient to sustain the jury's verdict that he conspired with the other prison officials to deprive the inmates of their constitutional rights. We disagree.

The government's evidence against Bigham was not as strong as it was against some of the other defendants. However, remembering that the conviction must be upheld if a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt and that we must "accept all credibility choices that tend to support the jury's verdict," *United States v. McKenzie,* 768 F.2d 602, 605 (5th Cir. 1985), *cert. denied,* — U.S. —, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986), we conclude that the evidence was sufficient to sustain the verdict.

The jury was presented with testimony that Bigham was present in the office and that he struck one of the inmates. There was also testimony that Bigham was in the office at the time the prison officials wrote the incident reports that other evidence suggested were designed to cover up the truth. Although several witnesses stated they could not remember whether Bigham was in the office or whether he had struck an inmate, no witness affirmatively rebutted the testimony that Bigham was, in fact, present. Nor was there any other affirmative evidence tending to negate the testimony against Bigham. The incriminating evidence thus stood unrefuted and sufficient

**2.** Although we have determined in this case that the district court could have found that Byrd's loss of memory was feigned, we do not hold that such a determination is necessary in every case such as this. Instead, we leave that question for another day. *Cf.* 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(d)(1)(A), at 801–120 (1985) ("[I]t would seem that the prior statement should not be included under 801(d)(1)(A) if the judge finds that the witness genuinely cannot remember, and the period of amnesia or forgetfulness is crucial as regards the facts in issue.").

**3.** Bigham argues that our decision in *United States v. Balliviero,* 708 F.2d 934 (5th Cir.), *cert. denied,* 464 U.S. 939, 104 S.Ct. 351, 78 L.Ed.2d 316 (1983), precludes us from holding Byrd's prior statement to be admissible. Although the

portion of that case relied on by Bigham is quite terse, there is language to the effect that claiming lack of recollection of making a statement is not inconsistent with an assertion that the statement was made. We do not read the case for the proposition Bigham urges, however, as the case apparently dealt with an attempt to impeach a witness by introducing extrinsic evidence to prove the existence of the prior statement. We do not believe the court's summary affirmance of the trial court's discretion on that issue is controlling in this case where we are presented with a different issue involving different facts. In any event, the inconsistency here does not relate to Byrd's recollection of his statement to the grand jury but rather his recollection of the underlying event.

to permit a reasonable juror to conclude that Bigham had entered the conspiracy.

## IV

Appellant Leal's sole contention on appeal is that the district court did not adequately instruct the jury as to when the use of force by prison officials rises to the level of a constitutional deprivation. Relying primarily on our decision in *Shillingford v. Holmes*, 634 F.2d 263 (5th Cir.1981), Leal argues that the district court erred in failing to instruct the jury to consider whether the inmates' injuries were severe, whether the use of force was disproportionate to the need, and whether the officers were motivated by malice. Under the circumstances in this case, we find that the district court's instructions were adequate.

*Shillingford* was brought as a civil case under 42 U.S.C. § 1983, in contrast to this criminal case under 18 U.S.C. § 241, 242. That is of no significance here. Whether a case is brought on the civil or criminal side of the docket, the actionable conduct is deprivation of rights secured by the Constitution or laws of the United States. The culpable intent will vary from wilfullness of a criminal charge to something less in a civil complaint, *see Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed.2d 1495 (1945), and it may vary according to the particular constitutional right infringed. *See Whitley v. Albers*, —— U.S. ——, 106 S.Ct. 1078, 1084–86, 89 L.Ed.2d 251 (1986) (deliberate indifference or wantonness required for Eighth Amendment violation); *Shillingford*, 634 F.2d at 265 (inspired by malice, shocking the conscience, rather than careless or unwise excess of zeal, required for substantive due process Fourteenth Amendment violation); *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) (objective unreasonableness or excessiveness of force used, evaluated by balancing the nature and quality of the intrusion against the governmental interests, required for pre-arrest Fourth Amendment violation); *see also* Comment, *Excessive Force Claims: Removing the Double Standard*, 53 U.Chi.L. Rev. 1369 (1986). Otherwise, between the criminal and civil statutes the courts recognize the intent of Congress to cover the same cases, though providing different remedies. *See Screws*, 325 U.S. at 99–100, 65 S.Ct. at 1034–35; *Monroe v. Pape*, 365 U.S. 167, 185, 81 S.Ct. 473, 483, 5 L.Ed.2d 492 (1961); *id.* at 212 & n. 18, 81 S.Ct. at 497 & n. 18 (Frankfurter, J., dissenting); *United States v. Stokes*, 506 F.2d 771, 775–76 (5th Cir.1975); *Wiltsie v. California Department of Corrections*, 406 F.2d 515, 517 (9th Cir.1968); *see also In re Estelle*, 516 F.2d 480, 486–87 (5th Cir.1975) (separate views of Tuttle, J.), *cert. denied*, 426 U.S. 925, 96 S.Ct. 2637, 49 L.Ed.2d 380 (1976).

Leal would have the court instruct the jury with language matching this statement from *Shillingford:*

> If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983.

634 F.2d at 265. Leal's argument reflects a misunderstanding of the *Shillingford* opinion. The court stated a case where § 1983 damages should, indeed, be awarded; this is not intended to describe the necessary elements of a constitutional violation. The quoted language describes factors, often used by the courts since Judge Friendly set them out in *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), to decide when the force exerted by a state officer reaches that degree of excessiveness so as to infringe on constitutionally protected rights. The excessiveness of force was no issue in the present case, as it was not in *Shillingford*. No force was justified. Leal disputes the charge that an inmate suffered harm while in his custody. If, however, the inmate was harmed, the only explanation for it is intentional abuse by Leal. Although the court charged the jury in this case on reasonable force, it was superfluous in as much as the indictment and

charge required a finding of wilfullness and the evidence raised no issue of justifiable force causing the harm Leal visited upon his victims.

■ As for the "severity" of the injury, again that tends to prove degree of force and the existence or absence of its justification. Technical batteries, angry words, or passing thumps do not rise to constitutional abuses, see Lynch v. Cannatella, 810 F.2d 1363 (5th Cir.1987), but injuries far shy of disablement suffice to offend.[4] Shillingford stated a cause of action with a lacerated forehead; in convicting Leal the jury could have found no less a harm inflicted by him than multiple burns on his victim's buttocks and thighs or the burns and a lacerated forehead.

■ The adequacy of the trial court's instruction must always be measured by the evidence and the issues raised there. United States v. Vaglica, 720 F.2d 388 (5th Cir.1983); United States v. Ylda, 653 F.2d 912 (5th Cir.1981). The indictment framed the issues here: did Leal wilfully conspire with the others to harm the inmates (count one), and did Leal wilfully assault one of them and burn his flesh (count four). The district court instructed the jury that to find the defendants guilty, it must find that the defendants deprived the inmates of their constitutional rights. The court told the jury that the inmates had a constitutional right not to be deprived of liberty without due process of law and that this right includes the right "to be kept free from harm while in official custody." The court stated the Constitution protects persons from "unauthorized violence" and that liberty "includes the principle that no person may ever be physically assaulted, intimidated, or otherwise abused intentionally and without justification by a person acting under the color of the laws of any state."[5]

As excessiveness of force was not at issue in this trial, neither was there an issue of triviality of injury. When the jury convicted Leal on the first count, under the court's charge they necessarily found that he conspired with the other officers to harm (by abusing and beating) the inmates. When the jury convicted him on the fourth count, under the court's charge they necessarily found that he wilfully assaulted and burned the flesh of an inmate. The jury chose between Leal's denial of the slightest harm and the government's evidence of multiple burns, contusions and abrasions, and a cut forehead. We find no error in

4. One panel of this court has suggested that any injury suffices where no force is justified. Ware v. Reed, 709 F.2d 345 (5th Cir.1983). Other circuits have held that serious injury is not a sine qua non of the constitutional violation. In Norris v. District of Columbia, 737 F.2d 1148 (D.C.Cir.1984), the district court had entered summary judgment against a plaintiff on the ground that the plaintiff had suffered no permanent injuries. The District of Columbia Circuit reversed, rejecting the notion that "injury of threshold severity and duration" must be alleged. Id. at 1151. While recognizing that not every push or shove by a state officer is a constitutional violation, the court held that "amount of force required to state a constitutional claim for prison officer battery varies with the justification for that force." Id. at 1152. The Sixth Circuit also has agreed that "a serious or permanent injury is [not] a prerequisite to a claim under Section 1983." Lewis v. Downs, 774 F.2d 711, 714 (6th Cir.1985). Instead, the court held, "all the facts and circumstances surrounding the application of force must be scrutinized and weighed." Id. at 714; see also Byrd v. Clark, 783 F.2d 1002, 1006 (11th Cir.1986) ("While the severity of an injury is not the determinative factor in assessing whether or not a constitutional violation has occurred, it is certainly probative of the amount of force used.").

5. This part of the instructions read in full:

The third element to be proved is that the conduct of the defendants must have deprived [the inmates] of rights secured or protected by the Constitution or laws of the United States. You are instructed that [the inmates] and all persons living under the protection of our Constitution have the legal right at all times not to be deprived of any liberty secured or protected by the Constitution without due process of law.

One of the liberties involved in this case by the Constitution is the liberty to be free from unlawful attacks upon one's person. It has always been the policy of the law to protect the physical integrity of every person from unauthorized violence.

Liberty thus includes the principle that no person may ever be physically assaulted, intimidated, or otherwise abused intentionally and without justification by a person acting under the color of the laws of any state.

the presentation by the trial judge to the jury of the law pertinent to this case.

AFFIRMED.