974 F.2d 1343
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arthur Packard CONDIE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arthur Packard CONDIE, Defendant-Appellant.
 Nos. 91-10168, 91-10483.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 17, 1992.*
Decided Sept. 14, 1992.
 
 1
 Appeal from the United States District Court for the District of Nevada; No. CR-89-00162-LDG, Lloyd D. George, District Judge, Presiding.
 
 
 2
 D.Nev.
 
 
 3
 AFFIRMED.
 
 
 4
 Before KOZINSKI and DAVID R. THOMPSON, Circuit Judges, and KELLEHER, District Judge.
 
 
 5
 MEMORANDUM***
 
 
 6
 Arthur Packard Condie was convicted of securities fraud, 15 U.S.C. § 78j(b) and 78ff(a); illegally structuring currency transactions, 31 U.S.C. § 5324; conspiring to defraud the United States, 18 U.S.C. § 371; and traveling in interstate commerce to aid a racketeering enterprise, 18 U.S.C. § 1952(a)(3). He appeals on a variety of grounds. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 DISCUSSION
 A. Sufficiency of the Evidence
 1. Structuring Currency Transactions
 
 7
 31 U.S.C. § 5324 makes it illegal to structure a currency transaction for the purpose of evading the reporting requirements of section 5313(a).[1] United States v. Hoyland, 914 F.2d 1125, 1130 (9th Cir.1990). The record shows Condie knew of these reporting requirements and intentionally arranged for the purchase of cashiers checks in small denominations from different banks to "keep the checks under the $10,000 amount." This evidence is sufficient to support his section 5324 conviction.
 
 
 8
 2. Interstate Travel in Aid of a Racketeering Enterprise
 
 
 9
 In order to convict a defendant of violating the Travel Act, 18 U.S.C. § 1952, the government must show he: (1) traveled in interstate commerce with the intent to promote an unlawful activity, and (2) committed an overt act in furtherance of that activity. United States v. Stafford, 831 F.2d 1479, 1482 (9th Cir.1987). Condie repeatedly traveled between Utah and Nevada to arrange for the purchase of stock by prospective nominee shareholders. As part of this plan, he intended to, and did, structure a series of cashiers check purchases in direct violation of 31 U.S.C. § 5324. This evidence was sufficient to convict Condie of violating the Travel Act.
 
 B. Prosecutorial Misconduct
 
 10
 1. Inflammatory Remarks During Closing Argument
 
 
 11
 The prosecutor's statements during closing argument did not prejudice Condie, and therefore do not require reversal. United States v. Lester, 749 F.2d 1288, 1301 (9th Cir.1984). Not only were these remarks relatively innocuous when taken in the context of the entire trial, see id. (statement that "we are all victims," and appeal to jury that an acquittal would send a message that crime was okay were not impermissible), any prejudice which may have resulted was neutralized by the district court's curative instruction, cf. United States v. Alvarado, 838 F.2d 311, 317 (9th Cir.) (harm flowing from improper factual misstatements made during closing argument may be neutralized by a cautionary instruction), cert. denied, 487 U.S. 1222 (1988).
 
 
 12
 2. Disclosure of Government's Impeachment Strategy
 
 
 13
 The prosecution had no duty to disclose its impeachment strategy to Condie. See United States v. Elam, 678 F.2d 1234, 1253 (5th Cir.1982) (Fed.R.Crim.P. 16 does not require the revelation of trial strategy). Thus, it did not deprive Condie of any information to which he was otherwise entitled by voluntarily discussing this strategy with Campbell.
 
 3. Access to Witnesses
 
 14
 Condie hypothesizes that the government deliberately dragged its feet in granting Wright immunity. Even if true, this does not alter the fact that Wright was immunized prior to trial and available to be called as a witness. Wright's voluntary refusal to be interviewed prior to trial does not warrant reversal. United States v. Black, 767 F.2d 1334, 1338 (9th Cir.), cert. denied, 474 U.S. 1022 (1985).
 
 
 15
 4. Refusal to Immunize Potential Defense Witnesses
 
 
 16
 A criminal defendant may compel the government to immunize a witness "where the fact-finding process is intentionally distorted by prosecutorial misconduct, and the defendant is thereby denied a fair trial." United States v. Westerdahl, 945 F.2d 1083, 1086 (9th Cir.1991). Such misconduct will only be found if "the evidence sought from the nonimmunized witness was relevant," and "the government distorted the judicial fact-finding process by denying immunity to the potential witness." Id.
 
 
 17
 Because the testimony of the Ultravest promoters would not have been relevant, no reversible misconduct occurred. Other than Condie's declaration, there is no evidence the promoters would have contradicted Cowen's testimony that Condie was a knowledgable participant in the Ultravest scheme. In fact, two of the promoters entered into plea agreements with the government which clearly indicated their testimony would have fully corroborated Cowen's statements.
 
 C. Admission of Evidence
 1. Evidence of Prior Convictions
 
 18
 Condie cannot challenge the district court's in limine ruling admitting evidence of his currency structuring and Travel Act convictions to impeach his testimony during his retrial because he introduced evidence of these convictions himself during direct examination. United States v. Williams, 939 F.2d 721, 725 (9th Cir.1991).
 
 2. Evidence of Prior Bad Acts
 
 19
 Evidence of prior bad acts is admissible under Rule 404(b) if: (1) there is sufficient evidence to allow the jury to conclude that the defendant committed the prior act; (2) the act was not too remote in time from the commission of the charged offense; (3) the act is similar to the charged offense; (4) the act is introduced to prove a material element of the charged offense; and (5) the act's probative value is not outweighed by its potential prejudice. United States v. Miller, 874 F.2d 1255, 1268 (9th Cir.1989). There is no dispute that the first three prongs of this test were met. We conclude that the last two prongs were also satisfied.
 
 
 20
 The evidence of Condie's participation in the uncharged schemes was introduced to show a material element of the charged offenses--that Condie knew of the fraudulent nature of the Aldiron and PBS Development schemes. See Vucinich v. Paine, Webber, Jackson & Curtis, Inc., 739 F.2d 1434, 1435 (9th Cir.1984) ("an intent to deceive or defraud[ ] is an element of a § 10(b) and Rule 10b-5 claim."). Further, the trial court did not abuse its discretion in concluding that the probative value of the challenged evidence outweighed its potential prejudice. The evidence of Condie's participation in the uncharged schemes was highly probative because it showed he knew the money received from the stock sales actually went to the promoters of the corporation, not the sham shareholders. While this evidence presented some risk of prejudice, that risk was minimal, see United States v. Scop, 940 F.2d 1004, 1009 (7th Cir.1991) (prejudicial effect of defendant's participation in prior stock manipulation schemes was negligible because that evidence "concerned truly similar activities rather than inflammatory criminal acts"), and, in any event, was negated by the court's curative instruction.
 
 D. Proposed Jury Instructions
 1. Nominee Instruction
 
 21
 The district court's formulation of a jury instruction is a matter of discretion so long as the instructions actually given fairly and adequately covered the issues presented. United States v. Lopez, 885 F.2d 1428, 1434 (9th Cir.1989), cert. denied, 493 U.S. 1032 (1990). Because the court thoroughly instructed the jury on: (1) the government's duty to prove that Condie knowingly engaged in fraudulent conduct, and (2) the defense of good faith, it did not err in refusing to give Condie's proposed nominee instruction.
 
 2. Missing Witness Instruction
 
 22
 The government's failure to immunize a witness who then invokes his fifth amendment right not to testify does not give rise to a missing witness instruction. United States v. Brutzman, 731 F.2d 1449, 1453-54 (9th Cir.1984). Consequently, the district court did not err in refusing to give a missing witness instruction based on the government's failure to immunize the Ultravest promoters.
 
 E. Allen Charge
 
 23
 "[A] district judge's Allen charge [will be] upheld in all cases except those where it's clear from the record that the charge had an impermissibly 'coercive effect' on the jury." United States v. Ajiboye, 961 F.2d 892, 893 (9th Cir.1992). In assessing the coerciveness of an Allen charge, the court looks to "the form of the jury charge, the period of deliberation following the charge, the total time of deliberation, and other indicia of coerciveness or pressure." United States v. Cuozzo, 962 F.2d 945, 951-52 (9th Cir.1992).
 
 
 24
 In giving the Allen charge, the district court expressly told the jurors not to relinquish their belief in Condie's guilt or innocence based solely on the opinion of other jurors. See Ajiboye, 961 F.2d at 894 (similar reminders "support[ ] the conclusion that [an] Allen charge was not impermissibly coercive"). Further, the jury deliberated for a total of over four days before reaching a verdict--nearly seven hours of which occurred after the Allen charge. See Cuozzo, 962 F.2d at 952 (three days of deliberation--six hours of which followed an Allen charge--indicated the charge was not coercive). Finally, the reluctant juror failed to indicate during deliberations following the charge that she felt any additional pressure to change her vote. Cf. United States v. Lustig, 555 F.2d 737, 746 (9th Cir.1977) (evidence of juror's repudiation of verdict after trial did not require reversal when the record indicated no disagreement with the verdict during trial), cert. denied, 434 U.S. 1085 (1978). Taken together, these circumstances clearly show the Allen charge was not impermissibly coercive.
 
 F. Continuances
 
 25
 Even if a motion for a continuance is erroneously denied, we will reverse only when the defendant has suffered actual prejudice as a result. Lustig, 555 F.2d at 744. Condie suffered no prejudice by the denial of his motion for a continuance. There is no evidence Wright would have offered testimony helpful to Condie. Nor has Condie identified any witnesses he could have located had the continuance been granted.
 
 
 26
 We also reject Condie's argument that the district court erred in denying his motion for a continuance to secure the appearance of Eloise Barney. The trial court specifically found that because Barney had no knowledge of the Aldiron or PBS Development schemes, "she would have added nothing, absolutely nothing to this trial." Condie was not prejudiced by her failure to testify. See United States v. Sterling, 742 F.2d 521, 527 (9th Cir.1984), ("[w]hen a continuance is requested to obtain witnesses, the accused must show ... that the testimony will be competent and relevant"), cert. denied, 471 U.S. 1099 (1985).
 
 G. Value of Federal Reserve Notes
 
 27
 Section 5313(a), in conjunction with 31 C.F.R. § 103.22(a)(1), requires a bank to file a report for any transaction involving an amount of "currency" exceeding $10,000. These provisions plainly contemplate the filing of a report whenever a transaction involving currency denominated at more than $10,000 occurs, regardless of the actual value of the transaction when converted to gold.
 
 
 28
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Hon. Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 5313(a) requires a bank to file a currency transaction report for any transaction involving more than $10,000. See 31 C.F.R. § 103.22(a)(1)